# SUPREME COURT OF THE UNITED STATES

———————

No. 21–6055 (21A99)

———————

## WILLIE B. SMITH, III *v.* JEFFERSON S. DUNN, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[October 21, 2021]

The application for stay of execution of sentence of death presented to JUSTICE THOMAS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting denial of the application for stay.

Willie B. Smith III, who is sentenced to die tonight by lethal injection in Alabama, seeks instead to be executed by nitrogen hypoxia, which has been a statutorily approved method of execution in Alabama since 2018. See S. B. No. 272, Act 2018-353 (2018). When the Alabama Legislature adopted nitrogen hypoxia as an approved means of execution, it expressly provided that individuals like Smith who were already on death row could choose to be executed by nitrogen hypoxia, but provided only a 30-day window in June 2018 in which to make this election. See Ala. Code §15–18–82.1(b)(2) (2021).

Smith alleges that he missed this opportunity because his intellectual disabilities rendered him unable to understand the election form that the Alabama Department of Corrections (ADOC) provided during that time. He filed suit in November 2019 seeking to elect nitrogen hypoxia as an al-

ternative to lethal injection. Rather than agreeing to execute Smith using nitrogen hypoxia, Alabama opposed his request. Today, the State will execute Smith by lethal injection while Smith's challenge remains pending.

The law compels denial of Smith's request for a stay of execution for the reasons identified by the Eleventh Circuit. Judge Jill Pryor, concurring in the decision below, however, identified serious concerns with the way the ADOC has administered the Alabama Legislature's directive to allow those on death row to choose nitrogen hypoxia as their means of execution. *Smith* v. *Commissioner, Al. Dept. of Corrections*, No. 21-13581 (Oct. 21, 2021), at 11. I share these concerns.

The reasons why Alabama chose to limit people on death row to a 30-day time window in which to familiarize themselves with the State's new means of execution, consider its risks and potential benefits, and, ultimately, to make the momentous decision as to whether they wished to die by this novel procedure, are not currently before this Court. The Court has previously considered the inequities engendered by this tight timeline. See *Dunn* v. *Price*, 587 U. S. ___ (2019). In *Price*, as here, the evidence indicated that inmates received the application form only days before the election window closed, presenting the possibility that some inmates were "given no more than 72 hours to decide how [they] wanted to die, notwithstanding the 30-day period prescribed by state law." *Id.*, at ___ (slip op., at 5) (BREYER, J., dissenting from grant of application to vacate stay). As Judge Pryor concluded, evidence suggests that the "feckless way" in which the ADOC chose to notify individuals on death row of this development was at odds with the gravity of that task and the humanity of those affected. No. 21-13581, at 12 (concurring opinion).

Alabama does not dispute that Willie Smith has significantly below-average intellectual functioning. Although the State debates his precise reading level and IQ, those

disputes do not resolve the fundamental inequity: the State's compressed timeline for notifying eligible inmates and haphazard approach to doing so. Once a State has determined that individuals on death row should have a choice as to how the State will execute them, it should ensure that a meaningful choice is provided.